**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:21-cv-02454-LKG |
| v. | ) ) ) | Dated: January 15, 2026 |
| SHEBA S. GOPAUL, | ) ) ) | |
| Defendant, *pro se*. | ) ) | |

**MEMORANDUM OPINION**

### I.   INTRODUCTION

In this insurance coverage action, the Plaintiff, Metropolitan Life Insurance Company ("MetLife") asserts a declaratory judgment claim against the Defendant *pro se*, Sheba S. Gopaul, alleging that Ms. Gopaul made certain fraudulent material misrepresentations, misstatements and/or omissions regarding her criminal history in her application (the "Application") for a disability income insurance policy issued by MetLife (the "Policy) in 2015. ECF No. 1. MetLife has moved for summary judgment on its declaratory judgment claim. ECF No. 113. The motion is fully briefed. ECF Nos. 113, 120, 121, 127 and 135. No hearing is necessary to resolve the motion. L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **DENIES** Ms. Gopaul's cross-motion for summary judgment (ECF No. 120) and (2) **GRANTS-in-PART and DENIES-in-PART** the Plaintiff's motion for summary judgment (ECF No. 113).

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

In this insurance coverage action, MetLife alleges that Ms. Gopaul made certain fraudulent material misrepresentations, misstatements and/or omissions regarding her criminal history in her Application for the Policy. *See generally* ECF No. 1. MetLife also alleges that it would not have issued the Policy to Ms. Gopaul had it known about these fraudulent material misrepresentations, misstatements and/or omissions. *Id.* at ¶ 33. And so, MetLife seeks a declaratory judgment that, among other things: (1) declares that the Policy was procured through Ms. Gopaul's false and fraudulent misrepresentations, misstatements and/or omissions in the Application; (2) declares that Ms. Gopaul's false and fraudulent misrepresentations, misstatements and/or omissions in the Application violated the terms and conditions of the Policy; (3) an adjudication that MetLife is entitled to rescind the Policy; and (4) an adjudication that MetLife has no legal obligation to pay any benefits to Ms. Gopaul under the Policy. *Id.* at Prayer for Relief.

The Application And The Policy

As background, on June 18, 2015, Ms. Gopaul completed the Application for the Policy. ECF No. 114-1 at J.R. 362 (the Application). When she signed the Application, Ms. Gopaul acknowledged and agreed to the following provision:

> AGREEMENT
>
> I have read this application and any supplemental application (collectively "Applications") and I agree that, to the best of my knowledge and belief: (a) all statements and answers are true and complete; and (b) all of the information is correctly recorded in the Applications. I further agree that such statements and answers may be relied on by Metropolitan Life Insurance Company (MetLife) in order to determine if a policy may be issued.

*Id.* at J.R. 360.

The Application also includes a provision on "limitation on authority," which provides as follows:

---

[1] The facts recited in this memorandum opinion are taken from the joint record; the complaint; the answer to the complaint; MetLife's motion for summary judgment; and Ms. Gopaul's response in opposition thereto. ECF Nos. 1, 12, 113 and 120.

> CAUTION: MetLife relies on Your answers to all questions in the application in accepting payment and issuing this Receipt . . .
>
> I have read this Receipt and reviewed the answers to all questions in the application. I represent that the answers to all those questions are true and complete, to the best of my knowledge and belief. I understand and agree that, subject to the Time Limit on Certain Defenses provision of the policy, if the answers to any of the questions in the application are materially untrue or incomplete, or if MetLife does not issue a policy within 60 days after the date the application was signed, the amount of premium paid will be refunded and this Receipt will be null and void. I understand and agree to all of the terms of this Receipt. I have a copy of this Receipt.

*Id.* at J.R. 362. In addition, the Application provides in Section VII, Question 15, which is entitled "General Risk Questions," as follows:

> Have you EVER been convicted of, plead guilty to or no contest to, a felony or misdemeanor other than a traffic violation, or are any charges pending against you? If YES, give details below.

*Id.* at J.R. 359.

It is undisputed that Ms. Gopaul answered "Yes" to Question 15. *Id.* at J.R. 359. It is also undisputed that Ms. Gopaul provided the following supplemental information in the Application: "15. 20 years old at the time – unauthorized use of vehicle – over $500." *Id.* at J.R. at 359.

In October 2015, MetLife issued and delivered the Policy to Ms. Gopaul, with an effective date of October 1, 2015. ECF No. 114-3 at J.R. 1123-24 (the Policy). Relevant to the pending motion for summary judgment, the Policy contains the following provision on "Time Limit on Certain Defenses:"

> After two years from the Effective Date of this policy, no misstatements, except for fraudulent misstatements, made by You on the Application can be used to void this policy, or to deny a claim under this policy, for a Disability starting after the end of such two year period.

*Id.* at J.R. 1136.

<u>Ms. Gopaul's Disability Benefits Claim</u>

On January 9, 2020, Ms. Gopaul submitted an initial claim for disability benefits form to MetLife. ECF No. 114-1 at J.R. 512 and 514 (initial claim for disability benefits

3

form).  In the disability claim, Ms. Gopaul claimed total disability from her occupation as the CEO/CFO of a healthcare company, due to moderate to severe pain in her pelvis, knee and hip when standing, climbing, walking, bending and lifting, due to a series of falls in June and August of 2019, along with postpartum depression and anxiety after delivering a baby in December of 2019.  *Id.* at J.R. 512-23.

Thereafter, MetLife conducted an investigation of Ms. Gopaul's claim.  *See* ECF No. 113 at 4.  During the claim investigation, MetLife requested a public records and criminal background search for Ms. Gopaul.  *See id.*  Through this research, MetLife obtained new information about Ms. Gopaul's prior criminal history, including criminal charges and guilty dispositions in Maryland and Virginia.  *See* ECF No. 114-1 at J.R. 449-74 (Maryland and Virginia criminal history reports for "Sheba Shabana Gopaul").  Specifically, MetLife alleges that the criminal background information that it obtained shows that Ms. Gopaul had been convicted of, or entered a guilty plea to, the following charges in Maryland and Virginia:

| **Maryland** | **Virginia** |
| --- | --- |
| Circuit Court for Prince George's County  Date of Offense: April 8, 2002  Charge: Theft Over/Theft Under (**Misdemeanor**)  Disposition: Guilty | Fairfax County General District Court  Date of Offense: August 9, 2002  Charge: Grand Larceny-credit cards (**Felony**)  Disposition: Guilty |
| District Court for Montgomery County  Date of Offense: February 15, 2007  Charge: Prostitution (**Misdemeanor**)  Disposition: Guilty Plea | Fairfax County General District Court  Date of Offense: July 29, 2001  Charge: Obtn. Money False Pretense (**Felony**)  Disposition: Guilty |
| District Court for Montgomery County  Date of Offense: May 2002  Charge: U/U use of livestock MV (**Misdemeanor**)  Disposition: Guilty | Fairfax County General District Court  Date of Offense: August 21, 2001  Charge: Auto Theft (**Felony**)  Disposition: Guilty |

*See id.* at J.R. 449-74; *see also* ECF No. 113 at 4.

MetLife contends that it would not have issued the Policy to Ms. Gopaul had it known about these three prior felony convictions and the multiple misdemeanor convictions sounding in fraud, because she would have been deemed an unacceptable insured due to both a medical and financial risk.

4

ECF No. 113 at 5.  MetLife also contends that its underwriting guidelines provide that more than one felony conviction is an automatic denial for disability insurance coverage, regardless of when the co conviction occurred.  *See* ECF No. 114-5 at J.R. 2463-65 ("IDI Underwriting Medical Manual" for "Court Records: Lawsuits/ Criminal Activities"); *see also* ECF No. 114-2 at J.R. 747-49 (17:24-19:15) and 933-35 (203:20-205:16) (Kris Anderson deposition).

In this regard, Kris Anderson, MetLife's claims manager in the Individual Disability Insurance Claims Department, testified during his Rule 30(b)(6) deposition that criminal convictions increase the risk for a disability income insurer, as they increase the possibility of the applicant's income being derived from criminal activity and that a history of crimes of dishonesty, such as theft, increase the risk of insurance fraud going forward.  ECF No. 114-2 at J.R. 747-49 (17:24-19:15) and 933-35 (203:20-205:16).  Notably, Mr. Anderson testified that it is "definitely a material consideration whether or not there have been convictions in the past when determining if somebody should be issued a disability insurance policy."  *Id.* at J.R. 748 (18:9-11).  Mr. Anderson also testified that MetLife's written underwriting guidelines specifically address felony convictions and mandate that no policy would have been issued to Ms. Gopaul if she had truthfully disclosed her complete criminal background on the Application for the Policy.  *See id.* at J.R. 747-49 (17:24-19:15) and 933-35 (203:20-205:16).

Ms. Gopaul counters that MetLife cannot show that her other criminal convictions were material to its underwriting decision with regards to the Policy, because Mr. Anderson testified that he could not speak to the specific review process used in this case to issue the Policy.  ECF No. 127 at 14.  In this regard, Ms. Gopaul argues that she completed the Application with the assistance of her broker in good faith.  *Id.* at 14-15.  Ms. Gopaul also argues that MetLife's failure to conduct a criminal background check at the time that she submitted the Application "forecloses its ability to prove materiality or reliance" to support its declaratory judgment claim in this case.  *Id.* at 20.  And so, Ms. Gopaul contends that MetLife cannot show that her alleged misrepresentations, misstatements and/or omissions about her criminal history were material, or that MetLife relied upon her statement on the Application regarding her criminal history in deciding to issue the Policy.  *See generally* ECF Nos. 120 and 127.

MetLife's Rescission Of The Policy

On May 8, 2020, MetLife sent a letter to Ms. Gopaul providing a Notice of Rescission that declared the Policy rescinded, null and void, due to the alleged material and fraudulent misrepresentations that she made in her 2015 Application.  ECF No. 114-2 at J.R. 655-60 ("Notice of Rescission," dated May 8, 2020).  In the notice, MetLife states that Ms. Gopaul had failed to

disclose her multiple felony and misdemeanor convictions in Maryland and Virginia. *See id.* at J.R. 656.

The Notice of Rescission also advises that Ms. Gopaul's failure to disclose her complete criminal history constitutes a material and fraudulent misrepresentation/omission in the Application. *Id.* at J.R. 655-56 and 659. And so, MetLife tendered to Ms. Gopaul all the insurance premiums that she had paid under the Policy from October 2, 2015, to March 2, 2020, together with interest, totaling $29,120.56. *Id.* at J.R. 654-55.[2]

On or about October 7, 2020, Ms. Gopaul appealed the denial of her claim and the rescission of the Policy to the Maryland Insurance Administration. *Id.* at J.R. 608-615 ("Appeal for MetLife Claim: Policy No: 6684187AH"). During the appeal, Ms. Gopaul argued that that the criminal charges that MetLife had uncovered originated from a single criminal case that resulted in multiple charges and that her insurance broker at the time, Gary Becker, informed her that disclosing the one misdemeanor charge she listed in response to Question 15 in the Application would suffice. *See id.* at J.R. 608-615. Mr. Becker testified during his deposition, however, that he had no knowledge of any criminal history for Ms. Gopaul beyond the criminal history provided in the Application. ECF No. 114-5 at J.R. 2582-83 (62:3-64:19) (Gary Becker deposition); *see also id.* at J.R. 2746 (written statement of Gary Becker).

On January 28, 2021, MetLife denied Ms. Gopaul's appeal of the rescission of the Policy and denial of her claim, because: (1) MetLife contacted Mr. Becker, who confirmed that he was not aware of Ms. Gopaul's extensive criminal history and did not recall asking for any other information related to the supplemental information she provided to Section VII, Question 15 on the Application; and (2) Ms. Gopaul's explanation that the newly discovered criminal charges originated from only one criminal case was not credible, because the convictions and/or guilty pleas arose from separate incidents, on separate dates, and in different States. *Id.* at J.R. 2770-78 ("Notice of Rescission," dated January 28, 2021). And so, MetLife concluded that Ms. Gopaul's misrepresentations/omissions were made with the intent to defraud MetLife at the time the Application was signed. *See id.* at J.R. 2772.

---

[2] Ms. Gopaul represents that she has not cashed MetLife's premium refund check. *Compare* ECF No. 1 at ¶ 23, *with* ECF No. 12 at ¶ 23.

6

### B. Relevant Procedural Background

MetLife commenced this declaratory judgment action on September 24, 2021.  ECF No. 1.  On March 19, 2025, MetLife filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56.  ECF No. 113.

On April 22, 2025, Ms. Gopaul filed a cross-motion for summary judgment and response in opposition to MetLife's motion for summary judgment pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof.[3]  ECF No. 120.  On May 19, 2025, MetLife filed a reply brief.  ECF No. 121.

On June 13, 2025, Ms. Gopaul filed a corrected reply brief.  ECF No. 127.  On July 3, 2025, MetLife filed a sur-reply.  ECF No. 135.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*,

---

[3] The Defendant *pro se* styles her response in opposition to MetLife's motion for summary judgment as a cross-motion for summary judgment and opposition to MetLife's motion for summary judgment.  ECF No. 120.  But the Court reads this filing to only oppose MetLife's motion for summary judgment.  *See id.*

7

477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. The Declaratory Judgment Act

Under the Declaratory Judgment Act, a district court, in "a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added).  "This Act gives federal courts discretion to decide whether to declare the rights of litigants." *Trustguard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

### C. Material And Fraudulent Misrepresentations

In Maryland, the general rule is that "a material misrepresentation in the form of an incorrect statement in an application" for insurance invalidates an insurance policy "regardless of whether the material misrepresentation is made intentionally, or through mistake and in good faith." *See Bryant v. Provident Life & Accident Ins. Co.*, 22 F. Supp. 2d 495, 497 (D. Md. 1998) (quoting *Fitzgerald v. Franklin Life Ins. Co.*, 465 F. Supp. 527, 534 (D. Md. 1979), *aff'd*, 634 F.2d 622 (4th Cir. 1980)); *Gary v. USAA Life Ins. Co.*, 229 F. Supp. 3d 365, 376 (D. Md. 2017) ("The burden is on the insurer "to establish fraud or misrepresentation by the insured in the application for insurance," but "Maryland law still imposes a heavy burden on the applicant to be responsible for all statements in or omissions from the application submitted by him." (quoting *Fitzgerald*, 465 F. Supp. at 535); *see also Dominant Invs. 113, LLC v. U.S. Liab. Ins. Co.*, 247 F. Supp. 3d 696, 701-02 (D. Md. 2017) ("[A] material misrepresentation . . . in an application invalidates a policy issued on the basis of such application . . . without inquiry into the presence

8

of a conscious design to defraud." (quoting *Hofmann v. John Hancock Mut. Life Ins. Co.*, 400 F. Supp. 827, 829 (D. Md. 1975))). And so, to void an insurance policy, due to a misrepresentation in the application, an insurer must demonstrate either that: (1) the misrepresentation was fraudulent or material to the risk assumed by the insurer, or (2) the insurer would not have issued the policy or issued the policy at the same premium rate had the correct facts been disclosed. *See* Md. Code Ann., Ins. § 12-207(b) ("A misrepresentation, omission, concealment of facts . . . does not prevent a recovery under the policy unless: (1) the misrepresentation, omission, concealment . . . is fraudulent or material to the acceptance of the risk . . . or (2) if the correct facts had been made known to the insurer . . . the insurer would not have (i) issued, reinstated, or renewed the policy; (ii) issued the policy in as large amount or at the same premium rate; or (iii) provided coverage with respect to the hazard resulting in the loss.").

      In this regard, this Court has held that a material misrepresentation is one that may "reasonably have affected the determination of the acceptability of the risk." *N. Am. Specialty Ins. Co. v. Savage*, 977 F. Supp. 725, 728-29 (D. Md. 1997) (holding that as a matter of law the insured's response on the insurance application was a material misrepresentation when his driving record indicated his license was suspended on at least two prior occasions and he answered "no" to the question of whether his license had been suspended or revoked). If the insurer would not have issued the policy had it known the true facts, or would have charged a higher premium, materiality is satisfied. *Gary*, 229 F. Supp. 3d at 376 (citing Md. Code Ann., Ins. § 12-207(b)); *see Claudy v. USAA Life Ins. Co.*, No. GJH-18-517, 2020 WL 949948, at *7 (D. Md. Feb. 27, 2020) ("The misrepresentation is material if the insurer cannot appreciate the scope of the risk it is asked to insure." (internal quotations and citations omitted)). And so, the Court has held that a potential insured's failure to disclose his/her complete criminal history in the application is a material misrepresentation. *See Jackson v. Hartford Life & Annuity Ins. Co.*, 201 F. Supp. 2d 506, 514 (D. Md. 2002) ("The misrepresentation concerning [the insured's] 1996 felony conviction, however, is material. From the deposition testimony of the senior underwriter who processed Jackson's life insurance application, and from company guidelines that instruct underwriters on how to treat applicants on probation for felony convictions, it is clear that the withheld information would reasonably have affected the determination of the acceptability of the risk.").

      Lastly, Section 15-208 of Title 15 of the Maryland Insurance Statutes provides that:

9

> [E]ach policy of health insurance shall contain the following provision:
>
> Time limit on certain defenses: (1) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period.

Md. Code Ann., Ins. § 15-208(a) (emphasis added). Given this, the misstatement of the applicant must be fraudulent to void an insurance policy, or to deny a claim for loss incurred or disability, more than two years after the date of issue. *See id.* The elements of fraudulent misrepresentation under Maryland law are that: (1) the defendant made a false representation to the plaintiff; (2) its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury resulting from the misrepresentation. *Chubb & Son v. C & C Complete Servs.*, 919 F. Supp. 2d 666, 673 (D. Md. 2013) (quoting *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994)). And so, Maryland courts have recognized that fraudulent intent can be drawn from, and inferred from, the circumstances surrounding the material misrepresentations, as direct evidence of intent rarely is available. *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 838 A.2d 404, 440 (Md. App. Ct. 2003).

## IV. ANALYSIS

MetLife has moved for summary judgment on its sole declaratory judgment claim in this case upon the grounds that the undisputed material facts show that: (1) Ms. Gopaul's misrepresentations and/or omissions about her criminal history were material; (2) Ms. Gopaul's misrepresentations and/or omissions about her criminal history were fraudulent; and (3) Ms. Gopaul's anticipated affirmative defenses do not preclude entry of summary judgment in favor of MetLife. ECF No. 113 at 11-21. Given this, MetLife argues that the Policy should be rescinded under Maryland law. *See id.* And so, MetLife requests that the Court grant its motion for summary judgment and enter final judgment in its favor. *Id.* at 21.

Ms. Gopaul counters that MetLife is not entitled to summary judgment, because there are material facts in dispute in this case. ECF No. 120. In this regard, Ms. Gopaul argues, among other things, that materiality cannot be established in this case, because: (1) MetLife erroneously classified her disclosed criminal charge as a misdemeanor; (2) MetLife declined to verify her

10

disclosed criminal history during the underwriting process; and (3) Kris Anderson lacks personal knowledge about the underwriting procedures that MetLife used in this case. *Id.* at 11-14. In addition, Ms. Gopaul argues that summary judgment is not warranted, because there is a genuine dispute of material fact as to whether the omissions were fraudulent. *Id.* at 13-16. In this regard, Ms. Gopaul argues that there are material factual disputes, because: (1) MetLife improperly seeks to show fraudulent intent by citing to another policy that she later obtained that was rescinded by MassMutual and (2) she relied on the professional advice of her insurance broker during the application process. *Id.* at 18. And so, Ms. Gopaul requests that the Court deny MetLife's motion for summary judgment. *Id.* at 27.

For the reasons that follow, the undisputed material facts in this case show that Ms. Gopaul's misrepresentations and/or omissions about her criminal history were material. But, there is a genuine dispute of material fact as to whether Ms. Gopaul's misrepresentations and/or omissions about her criminal history were fraudulent. And so, the Court: (1) DENIES Ms. Gopaul's cross-motion for summary judgment (ECF No. 120) and (2) GRANTS-in-PART and DENIES-in-PART MetLife's motion for summary judgment (ECF No. 113).

**A. Ms. Gopaul Is Not Entitled To Summary Judgment**

As an initial matter, the Court observes that Ms. Gopaul is proceeding without the assistance of counsel in this matter. And so, the Court liberally construes her filings. *Cf. Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). Ms. Gopaul has filed a document entitled "Defendant's cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment." ECF No. 120. But a careful reading of this filing shows that Ms. Gopaul has not moved for summary judgment. Rather, Ms. Gopaul argues in the filing that MetLife is not entitled to summary judgment, because there are genuine disputes of material fact that should be resolved by the trier of fact. *Id.* at 8-11. In this regard, Ms. Gopaul argues that MetLife is not entitled to summary judgment, because she has "present[ed] compelling evidence and meticulous legal analysis that establish genuine disputes of material fact, precluding summary adjudication and mandating resolution by jury trial." *Id.* at 8.

Given this, the Court construes Ms. Gopaul's filing to be a response in opposition to MetLife's motion for summary judgment. And so, to the extent that Ms. Gopaul intends this filing to also be a cross-motion for summary judgment, the Court DENIES the motion (ECF No. 120). *See* Fed. R. Civ. P. 56(a) (A motion for summary judgment filed pursuant to Fed. R. Civ.

11

P. 56 will be granted only if there exists "no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law.").

### B. The Undisputed Material Facts Show That Ms. Gopaul Made Material Misrepresentations Regarding Her Criminal History

#### 1. Ms. Gopaul Failed To Disclose Several Prior Criminal Convictions On The Application

Turning to MetLife's motion for summary judgment, the undisputed material facts in this case show that Ms. Gopaul misrepresented and/or omitted material facts about her prior criminal history in the Application. Notably, the undisputed material facts show that Ms. Gopaul disclosed a single conviction for a misdemeanor in the Application on June 18, 2015. *See* ECF No. 114-1 at J.R. 359 (the Application). In this regard, there is no dispute that Ms. Gopaul answered "Yes" in response to Question 15 of Section VII of the Application, which states as follows:

> Have you EVER been convicted of, plead guilty to or no contest to, a felony or misdemeanor other than a traffic violation, or are there any charges pending against you? If YES, give details below.

*Id.* at J.R. 359. It is also undisputed that Ms. Gopaul provided the following supplemental information regarding Question 15: "15. 20 years old at the time – unauthorized use of vehicle – over $500." *Id.* at J.R. 359.

There is also no dispute that Ms. Gopaul's prior criminal history includes several other felony and misdemeanor convictions in Maryland and Virginia as shown below:

| **Maryland** | **Virginia** |
|---|---|
| Circuit Court for Prince George's County  Date of Offense: April 8, 2002 Charge: Theft Over/Theft Under (**Misdemeanor**) Disposition: Guilty | Fairfax County General District Court Date of Offense: August 9, 2002 Charge: Grand Larceny-credit cards (**Felony**) Disposition: Guilty |
| District Court for Montgomery County Date of Offense: February 15, 2007 Charge: Prostitution (**Misdemeanor**) Disposition: Guilty Plea | Fairfax County General District Court Date of Offense: July 29, 2001 Charge: Obtn. Money False Pretense (**Felony**) Disposition: Guilty |
| District Court for Montgomery County Date of Offense: May 2002 | Fairfax County General District Court Date of Offense: August 21, 2001 |

12

| | |
|---|---|
| Charge: U/U use of livestock MV (**Misdemeanor**) Disposition: Guilty | Charge: Auto Theft (**Felony**) Disposition: Guilty |

*See id.* at J.R. 449-74 (Maryland and Virginia criminal history reports for "Sheba Shabana Gopaul"); *see also* ECF No. 113 at 4.  While Ms. Gopaul maintains that these convictions arise from the same case, she does not dispute that she was convicted of these offenses prior to submitting the Application.  *See* ECF No. 127 at 19.  Nor does Ms. Gopaul dispute that she failed to disclose these criminal convictions to MetLife in the Application.  *See generally* ECF Nos. 120 and 127.  And so, there can be no genuine dispute that Ms. Gopaul misrepresented the extent of her criminal history and omitted information about her criminal history in the Application.

### 2. The Omitted Convictions Are Material

The undisputed material facts also show that the misrepresentations and/or omissions about Ms. Gopaul's criminal history were material to MetLife's decision to issue the Policy.  This Court has held that a material misrepresentation is one that may "reasonably have affected the determination of the acceptability of the risk." *N. Am. Specialty Ins. Co. v. Savage*, 977 F. Supp. 725, 728-29 (D. Md. 1997) (holding that as a matter of law the insured's response on the insurance application was a material misrepresentation when his driving record indicated his license was suspended on at least two prior occasions and he answered "no" to the question of whether his license had been suspended or revoked).  Notably, the Court has also held within the context of insurance cases that a potential insured's failure to disclose his/her complete criminal history in the application is a material misrepresentation.  *See Jackson v. Hartford Life & Annuity Ins. Co.*, 201 F. Supp. 2d 506, 514 (D. Md. 2002) ("The misrepresentation concerning [the insured's] 1996 felony conviction, however, is material. From the deposition testimony of the senior underwriter who processed Jackson's life insurance application, and from company guidelines that instruct underwriters on how to treat applicants on probation for felony convictions, it is clear that the withheld information would reasonably have affected the determination of the acceptability of the risk.").

Here, the undisputed material facts show that Ms. Gopaul's misrepresentations and/or omissions about her criminal history were material, because MetLife would not have issued the Policy had it known about these prior convictions.  In this regard, Kris Anderson, MetLife's claims manager in the Individual Disability Insurance Claims Department, testified during his Rule 30(b)(6) deposition that

13

criminal convictions are material to MetLife's decision to issue a policy, because criminal convictions increase the risk for a disability income insurer, as they increase the possibility of the applicant's income being derived from criminal activity and that a history of crimes of dishonesty, such as theft, increase the risk of insurance fraud going forward. ECF No. 114-2 at J.R. 747-49 (17:24-19:15) and 933-35 (203:20-205:16) (Kris Anderson deposition). Mr. Anderson also testified that it is "definitely a material consideration whether or not there have been convictions in the past when determining if somebody should be issued a disability insurance policy." *Id.* at J.R. 748 (18:9-11).

In addition, Mr. Anderson testified that MetLife's written underwriting guidelines specifically address felony convictions and mandate that no policy would have been issued to Ms. Gopaul if she had truthfully disclosed her complete criminal background on the Application. *Id.* at J.R. 747-49 (17:24-19:15) and 933-35 (203:20-205:16). The unrebutted evidence before the Court also shows that MetLife's underwriting guidelines provide that more than one felony conviction is an automatic denial for disability insurance coverage, regardless of when the conviction occurred. ECF No. 114-5 at J.R. 2463-65 ("IDI Underwriting Medical Manual" for "Court Records: Lawsuits/ Criminal Activities"); *see also* ECF No. 114-2 at J.R. 747-49 (17:24-19:15) and 933-35 (203:20-205:16) (Kris Anderson deposition).[4]

Given this, the undisputed material facts in this case make clear that MetLife would not have issued the Policy had it known Ms. Gopaul's complete criminal history. *See Gary v. USAA Life Ins. Co.*, 229 F. Supp. 3d 365, 376 (D. Md. 2017) (citing Md. Code Ann., Ins. § 12-207(b)); *see Claudy v. USAA Life Ins. Co.*, No. GJH-18-517, 2020 WL 949948, at *7 (D. Md. Feb. 27, 2020) ("The misrepresentation

---

[4] Ms. Gopaul argues that her other criminal convictions were not material to MetLife's decision to issue the Policy, because MetLife did not conduct a search of her criminal background before issuing the Policy. *See* ECF No. 120 at 12-13 and 16-17. But the plain language of the Application makes clear that "MetLife relie[d] on [Ms. Gopaul's] answers to all questions in the application in accepting payment and issuing this Receipt . . . ." ECF No. 114-1 at J.R. 362 (providing that "MetLife relies on Your answers to all questions in the application in accepting payment and issuing this Receipt"); *see also id.* at J.R. 360 (providing that: "I further agree that such statements and answers may be relied on by Metropolitan Life Insurance Company (MetLife) in order to determine if a policy may be issued."). Ms. Gopaul also provides no legal or factual support for her argument that MetLife had an obligation to research her criminal history before issuing the Policy, and it is well-established that "Maryland law does not impose a duty on an insurance agent to investigate or verify the answers to an application's questions." *See Jackson v. Hartford Life & Annuity Ins. Co.*, 201 F. Supp. 2d 506, 511 n.3 (D. Md. 2002); *see also N. Am. Specialty Ins. Co. v. Savage*, 977 F. Supp. 725, 731 (D. Md. 1997) ("Generally, insurers do not have a duty to investigate insurance applicants and are entitled to believe what an applicant claims to be true.").

14

is material if the insurer cannot appreciate the scope of the risk it is asked to insure." (internal quotations and citations omitted)). And so, the Court agrees with MetLife that the undisputed material facts in this case show that Ms. Gopaul's misrepresentations and/or omissions about her criminal history were material to its decision to issue the Policy. *See Jackson*, 201 F. Supp. 2d at 514.

### C. The Undisputed Material Facts Do Not Show That Ms. Gopaul Made Fraudulent Misrepresentations Regarding Her Criminal History

While a close question, the Court is not satisfied that the undisputed material facts establish that Ms. Gopaul's material misrepresentations and/or omissions to MetLife about her criminal history were fraudulent. It is well-established under Maryland law that the elements of fraudulent misrepresentation are that: (1) the defendant made a false representation to the plaintiff; (2) its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury resulting from the misrepresentation. *Chubb & Son v. C & C Complete Servs.*, 919 F. Supp. 2d 666, 673 (D. Md. 2013) (quoting *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994)). And so, fraudulent intent with regards to Ms. Gopaul's misrepresentations and/or omissions can be drawn from, and inferred from, the circumstances surrounding the material misrepresentations, as direct evidence of such intent rarely is available. *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 838 A.2d 404, 440 (Md. App. Ct. 2003).

Here, the Court agrees with MetLife that the undisputed material facts show that Ms. Gopaul falsely represented her criminal history to MetLife, because she omitted several felony and misdemeanor convictions in the Application. The Court also agrees that the undisputed material facts show Ms. Gopaul knew that the representations about of her prior criminal history were false. As discussed above, Ms. Gopaul neither disputes these other convictions, nor denies that she did not disclose the convictions to MetLife. *See generally* ECF Nos. 120 and 127. *See, e.g.*, ECF No. 114-1 at J.R. 264-269 (264:1-269:8) (Ms. Gopaul's deposition testimony stating that "I am aware that there were judicial actions that occurred, and I do not recall the details.").

But there are material facts in dispute in this case about whether Ms. Gopaul's misrepresentations and/or omissions about her criminal history were made for the purpose of defrauding MetLife. As MetLife correctly observes, there is evidence before the Court to show

15

that Ms. Gopaul intended to defraud MetLife by concealing the extent of her criminal history. For example, several of Ms. Gopaul's felony convictions occurred within the same year as the lesser misdemeanor charge that Ms. Gopaul did disclose. *See* ECF No. 114-1 at J.R. 449-74 (Maryland and Virginia criminal history reports for "Sheba Shabana Gopaul"). In addition, Ms. Gopaul attempted to expunge certain of her Maryland convictions on August 1, 2019, prior to submitting the initial claim for disability benefits form to MetLife on January 9, 2020, and she subsequently denied such expungement efforts during discovery in this matter. *See* ECF No. ECF No. 114-1 at J.R. 376 (Court records showing Ms. Gopaul's petition for expungement of certain Maryland convictions); *id.* at J.R. 496-97 (Ms. Gopaul's second supplemental answer to MetLife's first Interrogatory Question 11); *id.* at J.R. 512 (Ms. Gopaul's initial claim for disability benefits form).

But Ms. Gopaul argues in this case that she did not intend to mislead MetLife about her criminal history, because she "explicitly relied upon professional guidance from [her] broker Gary Becker during application preparation, categorically refuting allegations of deceptive intent." ECF No. 120 at 25. The Court observes that Ms. Gopaul's argument is called into doubt by Mr. Becker's written statement to MetLife and his deposition testimony showing that he had no knowledge of any criminal history for Ms. Gopaul beyond what she disclosed on the Application at the time he helped Ms. Gopaul complete the Application. *See* ECF No. 114-5 at J.R. 2746 (written statement of Gary Becker); *see also id.* at J.R. 2583 (63:13-16) ("Q. [A]t the time the application was taken you were not aware of any criminal history . . . . Is that correct? A. Correct. Hundred percent."). Mr. Becker also testified that he never told Ms. Gopaul that she did not have to disclose all her convictions in response to Question 15. *Id.* at J.R. 2555 (35:16-25) ("Q. Did you ever tell Ms. Gopaul that she did not have to disclose all of her convictions in response to question 15? A. No. I would never do that.").[5]

Nonetheless, there is a genuine dispute in this case about whether, and to what extent, Ms. Gopaul relied upon the advice of Mr. Becker in answering Question 15 of the Application, and whether Mr. Becker provide any guidance to Ms. Gopaul regarding whether to disclose her

---

[5] Ms. Gopaul also testified during her deposition that she provided the answers to the Application over the phone to Mr. Becker's assistant. *See* ECF No. 114-1 at J.R. 39-40 (39:14-40:16) ("Q. Right. [The Application] was completed over the phone with you giving the information provided and Mr. Becker's assistant taking it down; is that correct? A. Yes. Mr. Becker's assistant completed [the Application] after a phone conversation that we had.").

16

other criminal convictions.  While the evidence before the Court casts doubt on Ms. Gopaul's version of these events, this is an issue to be resolved by the trier of fact at trial, after hearing the evidence and weighing the credibility of the witnesses.  And so, summary judgment on this final issue is not warranted.

Because the Court concludes that there are material facts in dispute regarding whether Ms. Gopaul intended to defraud MetLife by misrepresenting and/or omitting information about her criminal history, the Court does not address the remaining elements for fraudulent misrepresentation, or whether MetLife is entitled to rescind the Policy.

### V. CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** Ms. Gopaul's cross-motion for summary judgment (ECF No. 120) and

(2) **GRANTS-in-PART and DENIES-in-PART** the Plaintiff's motion for summary judgment (ECF No. 113).

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge